**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Judge Deborah L. Thorne** |
| | ) | |
| **Ford City Condominium** | ) | **Case No. 21-05193** |
| **Association,** | ) | **Chapter 11** |
| | ) | |
| | ) | |
| | ) | |
| **City of Chicago, Illinois,** | ) | **Adv. Proc. No. 23-201** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **Ford City Condominium** | ) | |
| **Association, et al.** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

The City of Chicago filed this proceeding seeking relief under the Illinois Condominium Property Act, 765 ILCS § 605/14.5. Specifically, the City seeks to have the court (1) declare the property managed by the Debtor Ford City Condominium Association a "distressed condominium property," (2) appoint a receiver, and (3) deconvert the property from a condominium to property owned in common by the over 300 unit owners.

The court abstains under 28 U.S.C. § 1334(c) from hearing this adversary proceeding, as it is merely "related to" the underlying chapter 11 case[1] and the matter can be heard more

---

[1] The City's complaint alleges that the matter is a core proceeding "because it concerns the administration of the Debtor's bankruptcy estate and it affects the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship." (Am. Compl. ¶ 3, Adv. Dkt. No. 21.) Yet the complaint asks for relief related to the condominium property, which belongs to the unit owners. In its filing dated August 16, 2023, the City seems to concede that this proceeding is merely "related to" the Ford City chapter 11 case. (*See* Adv. Dkt. No. 40.)

efficiently in the Circuit Court of Cook County. To the extent necessary, the court modifies the automatic stay to allow the City to proceed in the Circuit Court of Cook County.

## I.   Background

### A.  Bankruptcy Proceeding and the Property

On April 20, 2021, Debtor Ford City Condominium Association filed a petition under subchapter V of chapter 11 of the Bankruptcy Code. The Debtor is the governing body for a condominium project located at 4300 W. Ford City Drive in Chicago, Illinois (the "Property"). (Am. Compl. ¶ 6, Adv. Dkt. No. 21.) The Property consists of seven residential buildings with a total of 319 units. (*Id.* ¶ 7.)

For many years prepetition, the Debtor struggled to pay its debts and maintain the Property in a safe and secure condition. (*Id.* ¶ 13.) Although no bar date has been set, there are proofs of claim on file for $1.3 million in overdue water bills, $129,612 for elevator services, and $219,085 for masonry work. (*Id.* ¶¶ 16, 23, 24.) The City of Chicago has filed a significant number of cases against the Debtor for building code violations. An inspection in May 2023 found 115 violations, including: "large cracks and bulging in foundations with imminent risk of failure, failure to maintain elevators in multiple buildings, failing roofs, failing exterior walls, broken windows, ripped screens, missing smoke detectors and carbon monoxide detectors, missing emergency exit signs, expired fire extinguishers." (*Id.* ¶¶ 17, 44.)

As a result of serious allegations of mismanagement by the Debtor's board, the previous bankruptcy judge entered an order on September 2, 2021, removing the debtor-in-possession and, under 11 U.S.C. § 1183(b)(5), placing Subchapter V Trustee William Avellone in possession of the Property. (Bankr. Dkt. No. 129).[2] Since that date, Mr. Avellone has employed a management

---

[2] In a separate adversary proceeding pending before this court, the Trustee alleges mismanagement by the Debtor's board of directors.

company, collected assessments from unit owners, and done his best to prevent further deterioration to the Property. (Bankr. Dkt. No. 149.) Despite this effort, the building code violations continue and the future of the Property as a viable condominium remains in doubt. (Am. Compl. ¶¶ 43, 44.) Almost $1.5 million is owed in past-due condominium assessments, and at least $50 million is needed to bring the Property up to code.[3] (Monthly Operating Rep. for Small Bus. ¶ 25, Bankr. Dkt. No. 261.) The court fears imminent damage or injury to the unit owners or the public.

### B. Adversary Proceeding and the Illinois Condominium Property Act

As a result of the significant building code violations as well as the threats to the health and safety of the unit owners and the public, the City filed this adversary proceeding seeking an order to "deconvert" the Debtor's property under the Illinois Condominium Property Act, 765 ILCS § 605/14.5 (the "Act"). The Act defines "distressed condominium property" as units that are "operated in a manner or have conditions which may constitute a danger, blight, or nuisance to the surrounding community or to the general public." *Id.* § 14.5(a)(1).[4] A municipality shall initiate a proceeding under the Act by "filing a verified petition or verified complaint in the circuit court in the county in which the property is located." *Id.* § 14.5(b). Once the circuit court finds that the property is a distressed condominium property, the court may order the appointment of a receiver. *Id.* § 14.5(c). The circuit court may go a step further and declare that the property is no longer a condominium, that it will now be owned in common by the unit owners, that each owner will receive an undivided interest in the property based on the interest

---

[3] The Trustee stated in open court that at least $25 million is needed for common areas and another $25 million is needed to repair individual units.

[4] To meet this definition, the property must have two of six conditions listed in the Act, such as "serious violations" of zoning or building codes, delinquent property taxes, and potential (or successful) termination of essential utilities. *Id.*

previously owned in the common elements, and liens affecting any unit will be attached to the undivided interest of the unit owner. *Id.* § 14.5(c)(2). The receiver may then be able to sell the property and distribute funds based on the undivided interests of each owner. *Id.* § 14.5 (d).

The City's complaint asks this court to find, among other things, that the Property is a distressed condominium property and that it is owned in common by each of the unit owners. The City also seeks an order appointing Mr. Avellone as receiver under the Act.

## II.  Discussion

The court believes that it should sua sponte permissively abstain, as this adversary proceeding is best heard by the Circuit Court. The Circuit Court holds the proper judicial tools to hear this state law matter efficiently, and it routinely appoints receivers in cases of this nature.

### A.  Permissive Abstention

Permissive abstention is governed by 28 U.S.C. § 1334(c)(1), which provides:

> (1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

In addition to the considerations listed in this statute—the interest of justice and comity with state courts—courts look to a variety of factors to determine whether permissive abstention is appropriate. The court might consider the potential effect (or lack thereof) of abstention on the bankruptcy estate, the extent to which state law issues predominate over bankruptcy issues, the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, and the likelihood of forum shopping. *See In re Chi., Milwaukee, St. Paul & Pac. R.R. Co.,* 6 F.3d 1184, 1189 (7th Cir. 1993) (identifying twelve total factors that the Ninth Circuit considers for permissive abstention (quoting *In re Eastport Assocs.*, 935 F.2d 1071, 1075–76 (9th Cir. 1991)); *In re L & S Indus., Inc.*, 989 F.2d 929, 935 (7th Cir. 1993) (stating that the "presence of a state

law issue is not enough to warrant permissive abstention, but it nevertheless is a significant consideration" (collecting cases)). The Seventh Circuit has instructed that courts "should apply these factors flexibly" and that "no one factor is necessarily determinative." *Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d at 1189.

Because a court may raise the issue of abstention sua sponte, *see In re Repurchase Corp.*, 329 B.R. 832, 835 n.2 (Bankr. N.D. Ill. 2005) (citing *Belotti v. Baird*, 428 U.S. 132, 143 n.10 (1976)), the court now considers this issue on its own motion.

### B. Abstention is Prudent in this Case

A number of factors convince this court that it should abstain from the adversary proceeding. First, abstention from the adversary proceeding will not impact the bankruptcy estate. Under the Act, the Debtor does not own the units or the common areas—they belong to the unit owners. 765 ILCS § 605/6. No evidence has been provided that the Debtor owns any of the real property; in fact, the Debtor's schedules state that it does not have any ownership in real property. (Schedule A/B at 6, Bankr. Dkt. No. 1.) According to the Debtor's schedules, its only assets include cash, desks, and laundry equipment. (*Id*.) The court believes that, since Mr. Avellone became trustee-in-possession, the Debtor has collected assessments and now holds more cash. But this fact should not impact the City's complaint seeking to determine that the Property is no longer a condominium; the cash would remain an asset of the Debtor's estate subject to an adjudication of claims against the estate.

Second, the complaint and the relief sought are based entirely on Illinois law and not on any portion of the Bankruptcy Code. At most, the complaint is only "related to" the bankruptcy because the Debtor is a named party. Even though the Debtor is named, a resolution of whether

5

the Property should be determined to no longer be a condominium will not affect any property of the Debtor, but the interests of the individual unit owners.

Finally, the Circuit Court of Cook County would most efficiently administer this cause of action. The Circuit Court frequently appoints receivers to facilitate marshalling of assets and the subsequent liquidation as needed to provide the relief that the City seeks. The Act enumerates the appointed receiver's powers to secure and maintain the Property: the state court receiver may "use the rents and issues of the property toward maintenance, repair, and rehabilitation of the property prior to and despite any assignment of rents" and, with the court's authorization, the receiver can "recover the cost of any feasibility study, sale, management, maintenance, repair, and rehabilitation by the issuance and sale of notes or receiver's certificates bearing such interest as the court may fix . . . ."  765 ILCS § 605/14.5(f). Unlike the state court, the bankruptcy court does not have the authority to appoint a receiver with the specific powers provided for in the Act, and—most importantly—it cannot issue "receiver certificates."

The Trustee and the City argue that bankruptcy court is the best forum to adjudicate this dispute because of the pace of bankruptcy court litigation and the possibility of service by U.S. Mail. Despite the Trustee and City's rather disparaging assertions about the pace of litigation in Cook County—namely, that the Circuit Court moves as "slow as molasses"—this court has no doubt that its state court colleagues would treat this matter with appropriate alacrity. As the City notes in its complaint, the Act explicitly provides that the circuit court expedite and give precedence to a hearing under the Act, and this court has no doubt that the Circuit Court would expedite once it is apprised of the danger and risk to the public and the residents. (Am. Comp. ¶ 48.) Frankly, the City's concerns seem disingenuous, given that the underlying bankruptcy case has been pending since April 2021 and the City waited until July 2023 to file this complaint.

6

Moreover, though the Federal Rules of Bankruptcy Procedure permit service by U.S. Mail, the City has nonetheless asked to issue hundreds of alias summons and allow service by publication in the Chicago Daily Law Bulletin.[5] The mere inconvenience of following state court service rules is not enough to convince this court that this is the proper forum.

### III. Conclusion

For the reasons explained above, the court abstains from hearing this matter under 28 U.S.C. § 1334(c)(1). To the extent necessary, the automatic stay is modified for the City to pursue this action in state court.

Dated:   8-31-2023

_____
Deborah L. Thorne
United States Bankruptcy Judge

---

[5] The court denied the motion. Publication in the Chicago Daily Law Bulletin is unlikely to reach even one unit owner and would be wholly ineffective as a means of notifying all 319 unit owners and providing access to justice.

7